THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HEBIE WRIGHT, Defendant-Appellant.

(No. 55595; ▆▆▆▆▆▆

First District—February 1, 1972.

LEIGHTON, J., dissenting.

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James N. Karahalios, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant was indicted for the crime of rape, pled not guilty and waived his right to trial by jury. He was found guilty and sentenced to the penitentiary for a term of not less than 10 nor more than 20 years. Defendant contends that the testimony of the prosecutrix was not clear and convincing, that the State failed to corroborate her testimony with medical evidence, and that defendant was therefore not proven guilty beyond a reasonable doubt.

Mrs. Verdie Johnson, the prosecutrix, testified that on July 17, 1969, she and her husband lived at 5358 South Indiana Avenue in Chicago, Illinois, in a rooming house. The apartment which they occupied had a common kitchen and living room which was shared with defendant who lived on the same floor.

At approximately 5:30 P.M. on that day, Mrs. Johnson and defendant were the only tenants present on that floor of the building. Mrs. Johnson was cooking in the kitchen, and Wright entered and greeted her. After exchanging pleasantries, defendant left and Mrs. Johnson went to the washroom. Several minutes later, defendant again entered and asked Mrs. Johnson about her cousin whom Wright had met the previous week. A brief conversation took place and defendant departed from the apartment. Shortly thereafter, Mrs. Johnson went to her bedroom to lie down. Defendant entered the premises a third time and as he approached her, she told him to leave the room, but he unzipped his trousers, grabbed her legs and pinned them to the bed. She screamed but defendant physically restrained her and threatened to kill her if she screamed again. Mrs. Johnson resisted, but he twisted her arm, tore at her clothing, ripping the buttons from her dress, and pulled off her underclothing. Defendant then put both hands around her neck and choked her, forcing her to participate in sexual intercourse. When finished, he took the victim's panties, put them in his back pocket and ran from the room. Mrs. Johnson locked the door. Subsequent efforts by Wright to regain entrance were unsuccessful and Mrs. Johnson sat on the bed crying until he went away. When she later heard noises outside of the door, she opened it and told her landlady's grandson that she had been raped. The boy immediately called the police. When Mrs. Johnson's husband returned home from work approximately 30 minutes later, he was told of the attack and he went to the defendant's room. When he called for Wright to come out, the defendant replied, "I had a mess with your wife," and, "I didn't do anything to your wife." Up to this point, Mr. Johnson had made no mention of the attack to Wright. Defendant finally came out of the apartment and a fight between himself and Mr. Johnson ensued. The arresting

officers testified that when they arrived Mrs. Johnson had a generally disheveled appearance and Wright had again locked himself in his apartment. The police identified themselves and requested that Wright give himself up, but he replied that he had a knife and would not come out. Meanwhile, Mrs. Johnson testified that she returned to her room and douched, washed up, and put on a clean dress. She later stated that she took the sanitary measures because she feared that defendant might have some disease. Wright finally surrendered and was taken into custody.

The prosecutrix was later taken to a hospital where a "swab test" was administered. It was stipulated at trial that the results of this test were negative.

The officers testified that after his arrest Wright was placed in the lockup. But before they left him, he pulled a pair of panties from his pocket and made a remark to the effect that they were a souvenir. Before the officers could retrieve them, he threw the panties in the toilet and flushed them down.

At trial, only the prosecutrix and the two arresting officers testified for the State. There was no medical testimony, no testimony by anyone living in the building, and Mr. Johnson, the husband of the prosecuting witness, did not appear. The defendant did not testify in his own behalf and no witnesses were called by the defense. The trial court made a specific finding that the complainant's testimony was clear and convincing, found the defendant guilty of the crime of rape and he was sentenced after a pre-sentencing investigation.

*OPINION*

Defendant initially contends that the testimony of Mrs. Johnson was not sufficiently clear and convincing to lead to an abiding conviction of guilt and he specifically points to several alleged contradictions in her testimony.

■■ On direct examination of the complainant by the State, Mrs. Johnson testified that she had been in her bedroom at about 5:30 or 6.00 P.M. when Wright entered and attacked her. She then recounted the circumstances of the rape. Later, upon cross-examination, she was asked to indicate the first time that she had seen the defendant on that evening. In reply, she told of the two instances prior to the attack that Wright had entered the apartment while she had been in the kitchen and the washroom. Defendant contends that the witness' failure to divulge the two previous entrances on direct examination is contradictory to her later testimony. We cannot agree. On direct examination, the witness was not asked to relate the circumstances of the two earlier visits of Wright. It was only when that specific question was asked on cross-examination that she told of the earlier incidents. Her answers to those

questions were completely consistent with her previous answers, but merely provided more detail than previously requested from her. Therefore, this incident does not detract from the believability of her story.

Defendant next argues that the testimony of both the prosecutrix and the police officers as to whether any jewelry was taken from her at the time of the rape was conflicting. On cross-examination the prosecutrix stated that defendant took nothing from her except her pink panties. Her attention was then directed to a transcript of the preliminary hearing which indicated that she had testified that, after the rape, Wright had taken jewelry from her and put them in his pocket. Mrs. Johnson responded that she didn't know if she had been wearing any jewelry at the time and she didn't remember mentioning jewelry at the preliminary hearing.

The arresting officers testified on cross-examination that they had found nothing on the defendant's person when they searched him at the time of his arrest. Officer Zettergren was directed to his testimony at the preliminary hearing where he had stated that jewelry was taken from Wright's pocket when he was searched upon arrest. The police officer denied mentioning jewelry at the preliminary hearing and it was stipulated that the police reports contained no references to jewelry. Defendant maintains that these conflicts in the witness' testimony cast serious doubt on the credibility of the prosecutrix and the police officers, and that therefore the evidence was not clear and convincing.

■■■ It has long been held that the testimony of a prosecutrix alone is sufficient to support a conviction for rape where that testimony is found to be clear and convincing. (*People v. Davis* (1957), 10 Ill.2d 430.) Clear and convincing evidence, however, is not synonymous with uncontradicted or unimpeached testimony. Minor variances in the testimony may occur and, if so, these variances constitute mere discrepancies going only to credibility. (*People v. Jackson* (1963), 28 Ill.2d 566.) It is the task of the trier of fact, here the court, to weigh these discrepancies in light of all the other testimony in reaching its decision. If it is found that the discrepancies are so minor as not to detract from the reasonableness of her story as a whole, the testimony of the prosecutrix may be found to be clear and convincing. *People v. Thomas* (1960), 18 Ill.2d 439; *People v. Brown* (1963), 29 Ill.2d 375.

■■ The difference between the preliminary hearing transcript and the testimony of Mrs. Johnson and the police officers at trial is the only unexplainable discrepancy that has been pointed out by defendant. The testimony does not relate to whether the rape itself occurred, but to a matter merely incidental to the rape. Our reading of the record has revealed no contradictions in the testimony of the prosecutrix relating to the

question of whether the rape was committed. It appears, therefore, that the confusion on the part of the witnesses as to whether jewelry was taken by or found on the person of Wright is a minor discrepancy and relatively insignificant in light of the evidence as a whole. The trial court took cognizance of the conflict with earlier testimony, resolved it in favor of the State and made a specific finding that the testimony of the complainant was clear and convincing. We are not disposed to disagree.

■■■ Defendant next contends that the failure of the State to produce corroborative medical testimony casts reasonable doubt on the credibility of the testimony of the prosecutrix and effectively forecloses a finding of guilty. It is well settled, however, that where the testimony of the prosecutrix is found to be clear and convincing, it is not necessary that it be corroborated in order to warrant or sustain a conviction for rape. (*People v. Davis, supra.*) And it has been specifically held that medical testimony is not required to prove a rape, even where it has been established that the victim was administered the appropriate medical tests after the crime occurred. (*People v. Boney* (1967), 38 Ill.2d 23.) Here it was established that Mrs. Johnson submitted to medical examination after the attack and it was stipulated at trial that the results of those tests were negative. In view of the fact that she took sanitary measures after the rape and before the examination because of her fear of disease, a reasonable reaction for a rape victim unschooled in the intricacies of criminal investigation, the trial judge was justified in disregarding the stipulated test results as entirely inconclusive. Considering the consistency and reasonableness of her testimony as a whole and the trial court's finding that it was clear and convincing, medical testimony was not necessary to warrant the finding of guilty.

The judgment is affirmed.

Judgment affirmed.

SCHWARTZ, J., concurs.

Mr. JUSTICE LEIGHTON, dissenting:

I dissent. There is reasonable doubt in this case. The judgment should be reversed. *People v. DeFrates*, 33 Ill.2d 190, 210 N.E.2d 467, reversing 53 Ill.App.2d 277, 203 N.E.2d 188.